IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CR 499-001-2 |
| | * | |
| DERRELL GAULDEN | * | |

ORDER

Defendant Derrell Gaulden, through counsel, has moved for early release pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. Upon due consideration of the parties' submissions, including Defendant's inmate medical records, and the relevant law, the Court grants Defendant's request for relief.

I. BACKGROUND

Derrell Gaulden and his twin brother and co-defendant Terrell Gaulden distributed substantial quantities of cocaine, particularly crack cocaine, in the rural area of Hinesville, Georgia in this district in the mid-1990s. The drug operation also involved guns and violence: the Gaulden brothers hired their co-defendant, Joseph Jones, to kill Raymond Dent, an individual who reportedly stole cocaine from them. Jones shot at the mobile home that Dent and others occupied at least five times. Luckily,

no one was injured. Of note, a few weeks after this incident, Dent shot into Terrell Gaulden's home and struck him in the leg. Suffice to say, in the late 1990s, the Gaulden brothers were serious and violent offenders, and the community at large was not safe with them in it.

Ultimately, Derrell Gaulden was convicted by a federal jury in 1999 on multiple counts of distribution of cocaine base ("crack cocaine"); one count of possession with intent to distribute cocaine hydrochloride; one count of carrying a firearm during and in relation to a drug trafficking crime; and one count of drive by shooting. At sentencing on July 21, 1999, Derrell Gaulden's guideline range was determined to be 262 to 327 months imprisonment. The Honorable B. Avant Edenfield sentenced him to serve 327 months plus a consecutive term of 60 months for the 18 U.S.C. § 924(c) firearm conviction, for a total term of 387 months.

On four prior occasions, Derrell Gaulden has sought a sentence reduction based upon sentencing changes to crimes involving crack cocaine. Indeed, Derrell Gaulden's guideline range has been lowered to 135 to 168 months, plus the sixty-month consecutive sentence for the § 924(c) conviction.[1] This Court, through three

---

[1] Also, the Fair Sentencing Act of 2018 reduced the statutory minimum and maximum sentences of five to forty years to a maximum of twenty years on five of Derrell Gaulden's six convictions involving crack cocaine. However, because Count 10 involved a purchase of 30.2 grams of crack cocaine, the statutory penalty

2

different district judges including the undersigned, denied the motions upon consideration of the sentencing factors in 18 U.S.C. § 3553(a). The Court pointed to the magnitude of the drug operation and the attendant violence and recklessness of the defendant as grounds for denying the requested reduction in sentence. (See Order of Sept. 9, 2008 (Edenfield, J.), Doc. 259; Order of Mar. 6, 2012 (Edenfield, J.), Doc. 300; Order of Sept. 8, 2015 (Bowen, J.), Doc. 408; Order of July 17, 2019 (Hall, C.J.), Doc. 442.)

At present, Derrell Gaulden, who is 50 years old and has served 23 years in prison, has a projected release date of September 3, 2026. He has filed his compassionate release motion based upon the serious medical condition of seizure disorder.

## II.  DISCUSSION

The compassionate release provision imposes three conditions on granting a sentence reduction: the existence of extraordinary and compelling circumstances, adherence to the applicable Policy Statement found in U.S.S.G. § 1B1.13 (including a finding that the defendant is not a danger to the community), and support in the consideration of the sentencing factors of 18 U.S.C. § 3553(a). United States v. Tinker, 14 F.4th 1234, 1237-38 (11th Cir. 2021).

---

remains five to forty years for this count. (See Order of July 17, 2019, Doc. 442.)

3

Absence of even one of these requirements would foreclose a sentence reduction. Id.; United States v. Giron, 15 F.4th 1343, 1348 (11th Cir. 2021) ("[C]ompassionate release is permissible only if all three findings are made."). It is Defendant's burden to show that his circumstances warrant a reduction. See United States v. Granda, 852 F. App'x 442, 446 (11th Cir. 2021).

The applicable Policy Statement, § 1B1.13, provides three specific categories of "extraordinary and compelling reasons" to grant relief: medical, age, and family circumstances. U.S.S.G. § 1B1.13 & n.1(A)-(C). A fourth catch-all category provides: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the aforementioned three categories. Id. n.1(D).[2]

In this case, Defendant contends that his serious medical condition qualifies him for relief. The commentary to § 1B1.13 provides that a medical condition qualifies as sufficiently serious if:

> i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). . . . [or]

---

[2] The Eleventh Circuit Court of Appeals has held that district courts are bound by the definition of "extraordinary and compelling" set forth in Policy Statement § 1B1.13 and its application note. United States v. Bryant, 996 F.3d 1243 (11th Cir. 2021), cert. denied, 142 S. Ct. 583 (2021). Thus, the Court does not have discretion to consider other circumstances.

> ii) The defendant is-
>
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). Through his motion, Defendant contends that his seizure disorder, together with his other medical issues[3] and his heightened vulnerability to COVID-19, present extraordinary and compelling circumstances warranting release.

Defendant presents the expert declaration of Dr. Samantha Alonso in support of his motion. (Def.'s Mot., Doc. 479, Ex. 3.) Dr. Alonso, along with Dr. Zachary Bosshardt, found that Defendant's chronic medical conditions, combined with the Bureau of Prisons' incomplete management of those conditions, put him at "an ongoing risk of morbidity and mortality."[4] (Id. ¶ 6.)

---

[3] Defendant's other medical issues include inflammation of the stomach, ulcers, gastroesophageal reflux disease (GERD), bladder disorder, high blood pressure, migraines, glaucoma, and liver problems.

[4] Based upon their qualifications and without objection from the Government, the Court finds Dr. Alonso and Dr. Bosshardt to be experts qualified to offer opinions on Defendant's medical condition in this case.

According to BOP medical records, Defendant has had a history of seizures since childhood. His seizure disorder has not been effectively treated with anti-epileptic medication, and he continues to have breakthrough seizures. (Id. ¶¶ 7-8.) His seizures have been increasing in frequency and severity in the past several years, and Defendant has had to go to the emergency department of local hospitals on several occasions. (Id. ¶¶ 8-9.) Defendant's seizures are life threatening. If Defendant has an unwitnessed seizure or does not receive prompt medical attention, he could suffer irreversible brain damage or even death. (Id. ¶ 10.) Defendant is also at risk of suffering brain trauma if he were to fall or aspirate food or liquid during a seizure. (Id. ¶ 11.) The experts opine that Defendant's seizure disorder is not adequately controlled by the BOP. (Id. ¶ 13.) The Court is gravely concerned about this condition.

Defendant's problems do not end there. He suffers from nocturia – nighttime urinary frequency. His medical records from June 2020 indicate a need for a urology consult, but that does not appear to have happened. (Id. ¶ 16.) He suffers from stomach inflammation, ulcers, and internal bleeding. In 2016 Defendant was hospitalized for a severe unspecified illness for almost a month, at which time he had fever, weight loss, acute respiratory failure, abnormal kidney function, and severe anemia. According to Dr.

Alonso, because of his family's history of autoimmune disease, Defendant is at risk of recurrence of this serious illness. (Id. ¶ 18.) Indeed, in February 2021, Defendant again vomited blood despite the fact that he is on medication for ulcers and inflammation of the stomach. (Id. ¶ 14.) Notably, there has been no medical follow up to this condition. (Id.) Dr. Alonso opines that Defendant could have an autoimmune disease called celiac disease, but he has not been properly evaluated. (Id. ¶ 15.) Defendant is also in need of medical evaluation for liver abnormality. (Id. ¶ 17.) Finally, Defendant suffers from untreated glaucoma. (Id. ¶ 6.)

In response, the Government does not dispute the expert opinions *per se;* rather it points out that the experts have not examined Defendant and that they have not opined that Defendant's medical condition substantially diminishes his ability to engage in self-care in prison.

Based upon the medical records and the expert opinions, the Court concludes that the Bureau of Prisons has not effectively treated Defendant's seizure disorder. Additionally, this chronic neurological condition and Defendant's high blood pressure place him at higher risk of suffering from severe illness if he contracts

7

COVID-19.[5]  In short, Defendant's condition substantially diminishes his ability to provide self-care in a prison setting (in which he is at significant risk of contracting COVID-19); in fact, he faces a significant risk of harm about which he can do nothing, and the prison is unable or unwilling to provide the necessary medical monitoring and treatment. As stated by a sister district court, a prisoner's "ability to provide self-care within the environment of the correctional facility is diminished" if he does not "receive[] necessary medical follow up and treatment for his ongoing health issues while incarcerated." United States v. Morse, 2020 WL 6534899, at *3 (S.D. Fla. Nov. 3, 2020.)  Thus, under the unique circumstances of this case, Defendant's serious medical condition constitutes an extraordinary and compelling reason for early release.

Having so found, the Court must now consider the § 3553(a) factors and determine whether Defendant is a danger to the community. As discussed above, the Court is well aware that Defendant was a violent offender when he was sentenced. Defendant, however, has spent 23 years in prison, a sentence that

---

[5] The Court recognizes that Defendant has been vaccinated against COVID-19, but that was over a year ago. Moreover, the vaccine is not an immunity shield, and Defendant is uniquely positioned to suffer greatly should he contract it.

8

he would not face if he were convicted today.[6] Defendant's prison record is extraordinary. He has worked as a payroll clerk for UNICOR for over 17 years, a position of great trust and responsibility. (Def.'s Mot., Ex. 7.) As payroll clerk, Defendant had successfully handled over $6 million in payroll. (Id.) His current supervisor, Robbie Gill, states that Defendant is hardworking and diligent. (Id.) He continues: "[Defendant's] attention to detail and sense of urgency are two of his many positive attributes. Derrell is a leader and a role model amongst his peers, and I depend on him on a daily basis." (Id.) Additionally, Defendant has taken educational courses in Microsoft Office and Finance and has been able to assist in numerous UNICOR audits and record keeping. (Id.) Defendant is proficient in SAP, which is a leading supply chain software used in factories throughout the world. (Id.) Defendant has completed over 700 hours in HVAC training, 410 hours in Microsoft Office, 300 hours in advanced air conditioning repair, and a course in pest management. (Def.'s Mot., Ex. 5.) During his incarceration, Defendant has had only five non-violent disciplinary infractions, and only one in the last twelve years for having a cell phone charger. (Id.) Defendant has moved from a high security

---

[6] If sentenced today, Defendant would have a guideline range of 135 to 168 months in prison, plus 60 months for the §924(c) count, for a total maximum sentence of 228 months. Defendant has served approximately 282 months now.

9

classification to now serving in a low security facility. And, the BOP has now assessed Defendant's recidivism level as "low risk." (Id.)

Put simply, Defendant has demonstrated a remarkable rehabilitation. The Court finds that he no longer poses a danger to the community. Indeed, Defendant's disease may hinder any future possibility of criminal involvement; his five-year term of supervised release will also deter the risk of reoffending. Thus, the Court finds the § 3553(a) factors now weigh in Defendant's favor including the more recent characteristics and history of Defendant and the sentence already served provides just punishment, promotes respect for the law, and affords adequate deterrence.

Upon the foregoing, and after thorough and careful consideration of the benevolent purpose behind 18 U.S.C. § 3582(c)(1)(A), Defendant Derrell Gaulden's motion for compassionate release (doc. no. 479) is **GRANTED**. The Court hereby reduces Defendant Gaulden's term of imprisonment to **TIME SERVED** plus 21 days. This additional time will allow the Bureau of Prisons, the United States Probation Office, and Defendant Gaulden to make appropriate plans for his release from a long-served prison sentence.[7] Upon release, Defendant Gaulden will begin a five-year

---

[7] Defendant Gaulden intends to return to Hinesville, Georgia to live with his mother and supportive family. (See Letters of

10

term of supervised release, subject to the mandatory and standard conditions of supervised release as shall be explained by the United States Probation Office of the Southern District of Georgia. Defendant Gaulden shall contact the Probation Office within 72 hours of his release.

    **ORDER ENTERED** at Augusta, Georgia, this 19th day of July, 2022.

                                    J. RANDAL HALL, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF GEORGIA

---

Support, Def.'s Mot., Ex. 4.)  Thus, he will be supervised in this district.